# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**PHYLLIS BREWER, ET AL.**                                              **PLAINTIFFS**

**V.**                                     **CIVIL ACTION NO.: 1:06CV135**

**AMERICAN POWER SOURCE, INC.**                                   **DEFENDANT**

## ORDER

This cause comes before the court on the motion of defendant American Power Source, Inc. ("APS") for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiffs Phyllis Brewer *et al.* have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is a lawsuit filed pursuant to the Worker Adjustment and Retraining Notification Act ("WARN Act" or "the Act"), 29 U.S.C.A. § 2101 *et seq.*, alleging that defendant APS engaged in a mass layoff of employees without providing the sixty-day notice to affected employees required by the Act. The mass layoff in question occurred in February, 2005 after defendant, a manufacturer of uniforms to be worn by military personnel, allegedly received notice from the Department of Defense that it was dramatically reducing its orders for uniforms. That same month, defendant discharged 102 employees at its Columbus, Mississippi plant, without providing sixty days notice of that discharge. On May 3, 2006, Phyllis Brewer and thirty-nine other employees filed the instant action in this court, alleging WARN Act violations. Defendant has presently moved for summary judgment, on statute of limitations and other grounds.

The WARN Act authorizes a civil enforcement action by aggrieved employees or their union against a covered employer who fails to give sixty days notice of a plant closing or mass

layoff.  An employer who engages in a mass layoff and does not give its employees sixty days notice of the impending job terminations is liable for up to sixty days pay and benefits to those employees who lost their jobs.  The WARN Act lacks a statute of limitations, and, in *North Star Steel Co. v. Thomas*, 515 U.S. 29, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995), the U.S. Supreme Court held that courts must borrow the "most closely analogous" state limitations period unless it would "frustrate and interfere with the implementation of national policies, or be at odds with the purpose or operation of federal substantive law." 115 S.Ct. at 1930-33.  In *North Star Steel,* the Supreme Court considered Pennsylvania statutes ranging from two to six years in length and concluded that none would frustrate WARN's purpose.  *North Star Steel*, 115 S.Ct. at 1931.

It is thus apparent that, in determining whether the WARN Act claims in this case were timely filed, this court must apply the most closely analogous Mississippi statute of limitations.  Unfortunately, there appears to be no Fifth Circuit or Mississippi district court decision addressing the precise issue of which statute applies in this context.  In *Staudt v. Glastron, Inc.*, 92 F.3d 312, 316 (5th Cir. 1996), the Fifth Circuit did note that "most courts considering the issue have determined that a WARN claim is analogous to a contract action," *see Aaron v. Brown Group*, 80 F.3d 1220, 1225-26 (8th Cir. 1996); *Frymire v. Ampex Corp.*, 61 F.3d 757, 764 (10th Cir. 1995), but it declined to determine whether the same was true under Texas law since the claim at issue was  timely filed regardless.

In this case, plaintiffs submit that the most analogous statute of limitations is the general three-year statute of limitations applicable to written contracts set forth in Miss. Code Ann. § 15-1-49.  For its part, defendant contends that Miss. Code Ann. § 15-1-29 is the most analogous statute of limitations, in particular the statute's provision for a one-year limitations period

applicable to "action[s] based on an unwritten contract of employment."[1] In the court's view, defendant's position is more consistent with Fifth Circuit precedent.

In the 1982 decision of *White v. United Parcel Service*, 692 F.2d 1 (5th Cir. 1982), the Fifth Circuit held that § 15-1-29's one-year limitations period applied to claims under 42 U.S.C. § 1981 alleging race discrimination in employment contracts. In so holding, the Fifth Circuit agreed with a Mississippi district judge that "the decision of the Mississippi Legislature to add the last clause [to § 15-1-29] ... evidences an attempt by the Legislature to provide the specific limitation statute 'for actions analogous to actions based on racial discrimination in employment.'" *White*, 692 F.2d at 2, *citing Jordan v. Lewis Grocer Co.*, 467 F.Supp. 113, 117 (N.D. Miss. 1979). It seems clear that *White* was overruled by *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987),[2] where the U.S. Supreme Court held that state statutes of limitation governing personal injury actions were the most analogous ones for § 1981 purposes. In so holding, the Supreme Court concluded that § 1981 encompasses a class of claims broader than mere contractual rights and economic losses, including in its scope personal injuries similar to those addressed by statutes of limitations covering personal injury claims. *Goodman*,

---

[1] Section 15-1-29 provides that:
> Except as otherwise provided in the Uniform Commercial Code, actions on an open account or account stated not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three (3) years next after the cause of such action accrued, and not after, except that an action based on an unwritten contract of employment shall be commenced within one (1) year next after the cause of such action accrued, and not after.

[2] As recognized in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), *Goodman* has since been superceded by the enactment of 28 U.S.C. § 1658(a), which establishes a four-year statute of limitations for most post-contract formation claims under § 1981. This is of no moment for purposes of the present case.

107 S.Ct. at 2620-21. While *Goodman* clarified that state personal injury statutes of limitations applied to claims under § 1981, this is clearly not the case with claims under the WARN Act, which are purely economic claims bearing no resemblance to personal injury actions. Accordingly, *Goodman* is of no relevance to this case, and *White* retains its precedential value for the cause instanter.

As noted previously, other circuits have concluded that statutes of limitations applicable to contract claims are the most analogous ones for WARN Act purposes, and, assuming this is the case, *White* suggests that § 15-1-29 is the most analogous Mississippi statute in this context. Moreover, the court sees no valid argument that adopting this limitations period would "frustrate and interfere with the implementation of national policies, or be at odds with the purpose or operation of federal substantive law" within the meaning of *North Star Steel*. Also without merit are plaintiffs' arguments, based on an affidavit from plaintiff Annie Williams, that a document signed by the plaintiffs during orientation setting forth their rate of pay and other information, constituted a written employment contract within the meaning of Miss. Code. Ann. § 15-1-49. In the court's view, this evidence does not suffice to establish a written employment contract, and § 15-1-29 sets forth the appropriate statute of limitations in this case.

Having concluded that § 15-1-29's one-year statute of limitations applies in this case, the question next arises as to when this action accrued. The complaint in this case filed was filed on May 3, 2006, and plaintiffs contend that defendant "began a series of layoffs with start dates ranging from February 2, 2005 to February 25, 2005." Plaintiffs argue, however, that their claims did not accrue until the layoffs in question had persisted for 6 months, basing their argument on 29 U.S.C. § 2101(a)(6)(b), which includes three statutory options for meeting the

definition of an "employment loss" under the WARN Act. While 29 U.S.C. § 2101 does include a "layoff exceeding 6 months" as one employment action constituting an "employment loss," the statute provides two other examples of "employment losses" which, in sufficient numbers, may constitute an actionable "mass layoff" under the WARN Act. Specifically, 29 U.S.C. § 2101(a)(6) provides that

> (6) subject to subsection (b) of this section, the term "employment loss" means (A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6- month period;

It appears that the term "termination" in subsection (A) is intended to cover the usual employment situation whereby an employee is simply discharged from his position without being given reason to think that he will be re-hired. Indeed, this is the customary meaning of the term "termination" in the English language. By contrast, it appears that subsections (B) and (C) were intended to cover cases where an employee suffers something short of an unequivocal dismissal. For example, subsection (C) includes a "reduction in hours of more than 50 percent during a 6 month period." Considered in this context, the term "layoff exceeding 6 months" arguably contemplates the situation whereby an employee is told that his services are not now needed, but he is given some reason to think that those services may once again be needed, such as upon an improvement of economic conditions.

Even assuming that the foregoing interpretations are the correct ones, this does not resolve the issue of whether the WARN statute of limitation is tolled during the six-month period in which laid-off employees are waiting to learn whether their discharge is permanent. The issue of the accrual date of WARN claims in the present context is an exceedingly difficult and close one, and the Fifth Circuit in *Halkias v. General Dynamics Corp.,* 31 F.3d 224 (5th Cir. 1994),

anticipated this issue, writing as follows:

> Because the issue is not before us, we leave for another day when a WARN claim accrues, particularly in the diminished workload or layoff situation. Assuming, without deciding, that a layoff or reduced workload must persist for six months before becoming actionable, the limitations period would not begin to run until after that period expired.

If this were purely an issue of abstract legal theory, this court might well agree with plaintiffs that the one-year statute of limitations should be tolled during the six-month period in which laid-off employees are waiting to learn if their discharge is permanent. Indeed, there is certainly a conceptual appeal to the argument that those laid-off employees who choose to wait to file suit should not be penalized with a shortened limitations period.

At the same time, this court has very serious doubts as to whether an accrual rule based upon such inherently individualized notions as whether a particular employee either subjectively believes or objectively should believe that she might return to work is a workable basis for determining the accrual date of WARN actions in many if not most cases. In so concluding, the court would note once again that the statute is silent regarding exactly what the terms "lay off" and "termination" mean in the present context. While this court has inferred from the six-month deadline that laid-off employees have some expectation that they might return to work, the statute contains no clear provisions to this effect. Moreover, the reality of the matter is that there is often no clear demarcation between those employees who are terminated with no reasonable expectation of being re-hired and those "laid-off" employees who have such a reasonable expectation. Assuming that such a demarcation may exist in theory, it appears that proving that demarcation as a matter of fact, as to each individual plaintiff in a lawsuit which may involve a hundred or more plaintiffs, is not a workable standard in many if not most cases.

The facts of the present case amply demonstrate the inherent difficulties in establishing separate accrual dates for laid-off as opposed to terminated employees in WARN Act cases. As noted previously, affidavits submitted by defendant note that the layoffs in this case occurred after the Department of Defense unexpectedly reduced its orders for military uniforms in February, 2005. As a result of this very unwelcome news, defendant determined that it suddenly had need for far fewer employees than before and that a reduction in force was necessary. An affidavit from defendant's former office manager Donna Otts asserts that, of the 343 employees at the Columbus and Fayette plants, 102 of them were laid-off. Significantly, however, Otts provides in her affidavit and attached exhibits a list of 71 employees who "were either recalled prior to the lapse of six months, or were attempted to be recalled based upon the last known address given by the employee to the company, or refused re-employment within six months or had accepted work elsewhere prior to the six months, or were either not part of the layoff in question or were actually terminated for cause prior to the layoff in question." The affidavit further notes that 40 of those 71 employees are presently plaintiffs in this lawsuit. Plaintiff has submitted no affidavits or other evidence in opposition to defendant's evidence.

Defendant also notes that a separate lawsuit is pending before Judge Davidson in which many of the same plaintiffs in this action have asserted employment discrimination claims against it, alleging, *inter alia*, that:

> Subsequent to the February 2005 layoff, plaintiffs and others employed by defendant began to organize and express their disagreement with defendant's layoff and recall practices. In March of 2005, defendant announced that a significant number of the employees on layoff status had been terminated.

*Brewer v. American Power Source, Inc.*, No. 1:06cv27 (N.D. Miss.). Thus, when it suits their purposes to do so, many of the same plaintiffs herein have contended in a separate federal lawsuit

7

that they were actually terminated in March, 2005, which would clearly indicate that their claims filed in May, 2006 are untimely filed, assuming that a one-year statute of limitations is applicable. Indeed, other district courts have concluded that letters and other communications from an employer to an employee during the six month layoff period may transform a layoff into a termination, s*ee Michigan Regional Council of Carpenters v. Holcroft L.L.C.*, 195 F.Supp.2d 908, 915 (E.D. Mich. 2002), and there seems to be little doubt that this is the case.

Plaintiffs have made no mention of these March, 2005 terminations in their submissions before this court; to the contrary, plaintiffs specifically assert in their brief that "because plaintiffs were laid off, as opposed to being terminated, the six month period applies." Clearly, plaintiffs have lost a great deal of credibility with this court by choosing to make such selective and contradictory representations of the facts before different federal courts. Credibility issues aside, the facts of this case demonstrate the extreme difficulties which would confront a district court in attempting to determine the proper accrual date for a WARN Act claim based upon the vague, subjective and highly individualized notions of whether a particular employee was "terminated" or "laid off." WARN Act claims involve, by their nature, "mass layoffs" affecting numerous employees, and the facts of this case demonstrate how each employee has his own unique employment status which is subject to change at any time during the six-month period. It simply does not appear practicable for district courts to individually assess the employment status of each of these employees in many if not most cases.

As this court is not an appellate court, it will not presume to promulgate actual standards in this regard, and, as discussed below, it is not necessary for this court to do so in this particular case. The court would note, however, that employees should arguably have the standing to file

WARN Act claims at any time following the discharge of a sufficient number of employees to qualify as a mass layoff. Once the employees have filed suit, a variety of legal options could be made available to defendants who dispute that the suit was properly filed, including motions to stay pending the completion of the six-month layoff period, Rule 12 motions seeking dismissal on the basis of allegations in the pleadings, and summary judgment motions. Such an approach would appear to better recognize the realities of WARN Act litigation than a rule of law making the date of accrual dependent upon the status of each employee discharged in a mass layoff.

At any rate, even assuming that the proper accrual date for laid-off employees under the WARN Act is at the end of the six-month layoff period, this court would still conclude that the plaintiffs in this case have failed to submit sufficient evidence to survive defendant's summary judgment motion. The plaintiffs have failed to offer any evidence (or even substantial arguments) to contradict the affidavits submitted by defendants indicating that many of the plaintiffs in this case were either recalled prior to the lapse of six months, refused re-employment, were not part of the layoff at all or were actually terminated for cause prior to the layoff in question. Moreover, plaintiffs have not attempted to explain the allegations in the employment discrimination action pending before Judge Davidson that many of them were notified in March, 2005 that they were being terminated. Accordingly, even assuming that more generous accrual rules apply to plaintiffs who were laid-off for six months, the plaintiffs in this case have utterly failed to establish genuine fact issues that they were, in fact, laid-off for such a six-month period. The court therefore concludes that defendant's motion for summary judgment is due to be granted regardless of the proper legal interpretation of the accrual issue.

While it is not necessary for the court to address the merits of the lawsuit in light of the

foregoing conclusion, it would alternatively note its agreement with defendant that the "unforseen business circumstances" exception applies in this case. 29 U.S.C.A. § 2102(b)(2)(A) provides that "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." The court agrees with defendant that the affidavits of its employees Roxanne Ferriero and Cathy Griffith detailing the unexpected decline in business resulting from the dramatic reduction in Defense Department orders describes an "unforseen business circumstances" within the meaning of the WARN Act.

In response to the evidence submitted by defendant, plaintiffs have submitted very little evidence of their own, instead electing to take issue with the affidavits as being hearsay and/or unreliable evidence of the impact of the reduction in orders upon defendant's business. Notably, plaintiffs do not appear to have utilized the discovery period to gain their own information regarding the true circumstances of the mass layoff in this case and its effects, and the court concludes that, to survive summary judgment, plaintiffs must do more than they have done in this case. In the court's view, the affidavit of defendant's president Roxanne Ferriero describing the circumstances of defendant's loss in business constitutes very substantial evidence in support of its position, and it appears that the portion of the affidavit describing the phone call reducing the Defense Department's uniform orders involves a non-hearsay verbal act, or, alternatively, falls under the residual exception to the hearsay rule.[3]

---

[3] *See, e.g. Tompkins v. Cyr*, 202 F.3d 770, 779 n. 3 (5th Cir.2000) (stating that a threatening letter was a verbal act, and not a "statement" for purposes of the hearsay rule). In the court's view, the act of terminating or reducing a contract is, in itself, a verbal act rather than a statement of fact. Moreover, for the purposes of the catch-all or residual exception to the hearsay rule, the court would note that there appears to be little dispute that a reduction in military

Plaintiffs appear to take issue with the use of affidavits at all in support of summary judgment motions, but it should be apparent that federal courts routinely rely upon such affidavits in determining summary judgment issues. The court does not doubt that this case presents close and difficult legal issues, and plaintiff and defense counsel have done a commendable job in briefing these issues. It seems clear, however, that defendant has done a much more thorough job in developing actual *facts* in support of its arguments, as most of the exhibits cited by plaintiffs are simply copies of the exhibits prepared by defendant. This case is presently set for non-jury trial before this court, and it seems clear that plaintiffs have not used the discovery process to prepare the sort of factual basis for their claims which would be needed for them to prevail. In particular, they appear to have developed no evidence detailing the status of each plaintiff as either having been laid off or terminated, and, if they have developed such evidence, they failed to submit it to this court. Similarly, plaintiffs appear to have developed no evidence of their own regarding the business circumstances of the reduction in force in this case, choosing instead to take issue with the proof developed by defendant. As the ultimate trier of fact in this case, it is this court's responsibility to assess the evidence to determine whether genuine issues of material fact exist regarding plaintiffs' claims, and the court concludes that such issues do not exist. In light of the foregoing, the court concludes that defendant's motion for summary judgment is well taken and should be granted.

It is therefore ordered that defendant's motion for summary judgment is granted.

A separate judgment will be issued this date pursuant to Fed. R. Civ. P. 58.

---

uniform orders did take place, and it seems somewhat disingenuous for plaintiffs to rely on the hearsay objections in this context, when they have not submitted a shred of evidence of their own contesting the fact that an order reduction occurred in February, 2005.

**SO ORDERED**, this the 3rd day of October, 2007.

                                                  **/s/ Michael P. Mills**
                                                  **CHIEF JUDGE**
                                                  **UNITED STATES DISTRICT COURT**
                                                  **NORTHERN DISTRICT OF MISSISSIPPI**